The next case today is United States v. Eddie Guerrero-Narvaez at all, appeal number 19-2209. Attorney Pelleteri, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors, and may it please the Court, John Pelleteri on behalf of the United States Appellant. I'd like to reserve two minutes of rebuttal, if I may, Your Honor. Thank you. The evidence in this case at trial, construed in its totality and in the light most amenable to the jury's verdict, permitted the jury to reasonably conclude that Mr. Guerrero was prepared to inflict serious physical harm or death, if necessary, to carry out the carjacking in this case. I'll start with perhaps the most probative evidence, which are Mr. Guerrero's own words, his oral and verbal threat to Ms. Silva. He told her, and this is Ms. Silva's testimony, that, quote, he wasn't going to harm either her or her children if they cooperated. That's on page 28 of the transcript. He said he wasn't going to harm Ms. Silva or her children again if they cooperated. That's again at pages 31 to 32. And according to Ms. Silva, quote, everything was threatening against my children and against harming us. And he said he would hurt them if I did what he was asking from me. That's page 42. So, Mr. Guerrero. Counsel, there's a concept in this area of the law of the so-called empty threat. And the district court took the view, yes, those things were said to the driver. And quite understandably, she felt threatened by what was happening. But the court, sort of looking at the circumstances, the totality of the circumstances, concluded that this was an empty threat and that it did not, what you've described, did not contribute to a rational finding that the defendant was prepared to resort to whatever force was necessary, perhaps causing serious vital injury or death, in order to take control over the vehicle. So, why was the district court right to view this as the classic empty threat? Your Honor, I agree that the nub of the issue here is, um, could the jury reasonably conclude that Mr. Guerrero meant what he said, or were they compelled to conclude that he was faking it? In other words, is it irrational to conclude that he meant what he said when he said, I'm going to harm you if you don't leave this car. And, um, all of the collectively, the evidence in this case permitted the jury to reasonably conclude, to be, to rationally conclude that Mr. Guerrero meant what he said. He wasn't faking it. And there are several factors, there are several, uh, circumstances in this case that point toward that conclusion. First, you have Mr. Guerrero's conduct at the time of making the threats. He was standing directly in front of Ms. Silva, in front of her, um, blocking her exit from the car. She could not get out of the car. He was right in front of her, right up in front of the car. She could not get out. And at the same time, he motioned to his, um, his waist and to her, to her, indicated that he was armed at the time. When he was saying, I'm going to harm you if you don't get out, then he also, um... Well, there's nothing in the record that says he motioned to his waist. It says, it says he touched his body. But I mean, one of the points that the defendant makes is that there was never a question as to exactly what he pointed to. And given, you know, God bless him, given that outfit he had on that day with the, uh, close fitting shirt. I mean, it seems to me that that's something that the district court must have taken into consideration in trying to figure out, could he hide something under that shirt? Well, Your Honor, she, uh, Ms. Silva said... He was just wearing a t-shirt. Isn't that what's described? It's just a t-shirt that he's wearing? Uh, I believe he was wearing a t-shirt. If you look at the video, he's wearing... Sorry, Your Honor. If you look at the video, he's wearing a t-shirt and shorts. I mean, we're not saying he had a large, bulky weapon. We're saying that, uh, um, that it's possible and the jury could reasonably infer that he had some sort of weapon, whether it was a pocket knife or whatever, that would help him carry out this, this carjacking. But aside from the weapon, I mean, you don't even, even if it's inconclusive about the weapon, and to be clear, we think it's reasonable to infer that he was potentially armed, but even without the weapon, you have, um, his his relative size to Ms. Silva. What do you make of the 20 minutes that, uh, delay? I mean, if it was such a threat, she even waited 20 minutes before calling the police. I mean, it didn't, it didn't even seem as if she took it that seriously. Your Honor, I don't think that the record supports, um, that inference. I think she took it very seriously. She was very nervous about what would happen to her children. But she didn't call the police. She called her husband. She called the guy who had sold her the car. Well, she wasn't confident that the police would report immediately. And in fact, it took them several hours to report to the scene. So that, you know, it, it just, that, that kind of bolsters her, her assumption. She called her husband and he told her to call 911, but she was calling her mechanic, which she had just seen. And then she did call 911. So I think that this is all, um, again, these are jury arguments that the defendant was permitted to tell, to argue to the jury and say, well, look, maybe Ms. Silva didn't think that. We think that's absolutely not correct. We think she did think she was threatened. She was scared. She told on the 911 call that she was scared about leaving the premises because she didn't know if he had a gun or a knife. Um, so, uh, and again, this is, you have to look at all the facts in the, in the manner most favorable to the jury's verdict. And here you have, um, uh, Mr. Guerrero, who is about six feet tall, um, a large man who, uh, approached a, a, um, a woman with two children. She's 4'11". But counsel, why all those facts, why don't they go to the issue of intimidation? Sure. I mean, she understandably was intimidated, but this issue here is not intimidation. Sort of the issue is what is in his mind. What is he prepared to do to effectuate the car, the theft of the car? So I don't know what his size has to do at all with what's in his state of mind, what's in his mind about what he is prepared to do in order to steal this vehicle. Here's why size is relevant, your honor. Mr. Guerrero and, um, Mr. Cartagena were at that, uh, gas station for about an hour before, uh, they carried out this carjacking and they were looking for victims, trying to select the victim that they could, um, that they could victimize and steal a car from. And they selected Mr. Guerrero, the larger one, to carry it out. And then they selected a vulnerable person to, against whom Mr. Guerrero could use physical force to carry out, to finish a carjacking. Here you, um, so it's, it's akin to, for example, when courts look to if someone is, um, irrelevant, it's what's relevant is can the defendant, was he capable of carrying out the threat? And here the, the choosing the victim and the huge size differential meant that Mr. Guerrero could, if necessary, um, use physical force to, to carry out the carjacking here. So it's, for example, courts have looked to if someone holds up a gun to someone and says, I'm going to shoot you if you don't get out. Courts consider among other, any other factors, was the gun loaded? Because if someone says, I'm going to shoot you, but the gun's not loaded, that was just- The district courts seem to take the view that they, Mr. Cartagena, Mr. Guerrero, they, they seem to choose someone who was small. There were children in the car, so there'd be no resistance. They would not have to resort to any kind of an individual who facing someone much larger in size would just say, yeah, take it. I mean, that suggests perhaps that I don't see how that supports the notion. But your honor- He was prepared to resort to violence to carry out the, um, stealing the vehicle. But your honor, that's, that's a jury argument. That's one that the, that the defense wanted the jury to conclude. The other inference, which, um, we believe is permissible, not irrational at all, is that they chose a victim because, um, who's smaller because if that victim resisted, Mr. Guerrero, the much larger person could use force to finish the carjacking. That's a reasonable inference that the jury was permitted to take. Um, and that's the, that's the inference that must be credited in the rule 29, rule 29 analysis. Um, I see my, my time's expired and I, uh, reserve, unless the court has additional questions now, I, I, uh, would, um, wait for rebuttal, your honor. Well, just very quickly. I mean, the, I mean, the district court did an exhaustive review. I know these are very fact specific cases. I appreciate that, but I mean, the district court did an exhaustive review of cases, uh, involving this carjacking statute and could not find any case that was remotely devoid of any evidence of the use of a weapon of some kind of the resort to some physical force of some kind. Nothing seemed to come close to the facts of this case. The suggestion being that this passes any line of rationality in terms of how a mental state, what, what is the value of all those precedents that the district court, uh, cited? Well, we think the district court, um, kind of mis, misapplied those precedent by suggesting that there have to be these kind of categorical rules, like there has to be either a gun or there has to be force. And that's just not, um, that's not correct. It's not the correct method of analysis. What the correct method of analysis is to look at the totality of the evidence in the particular case and conclude, could a jury reasonably conclude, or was it totally irrational for the jury to conclude that the defendant here was prepared to, uh, commit violence to carry out the carjacking? And by, by looking at, by parsing these little cases and seeing, well, this factor is in that case there, but not here, this factor is there, that misconstrues the relevant standard, the relevant legal standard. And we agree that this is a close case. Um, we're not, we're not, uh, denying that. Um, but the fact that other cases may have had different types of evidence and in some respects, perhaps stronger evidence doesn't mean that the evidence in this case was met, uh, renders the jury's conclusion utterly irrational. So the, it's a very tough standard in a way. I mean, it's the intent to seriously harm or kill. I mean, that's, that's really what you have to show. What, what is there that would permit a rational jury to find on these facts that the defendant was prepared to seriously harm or kill this woman if she did not give up control of the car? Seriously harm or kill. Yes. Right. I mean, and again, the jury has to be permitted to make common sense conclusions and it defies common sense to suggest that Mr. Guerrero was prepared to, to use force and harm Ms. Silva, but he was going to stop just short of serious harm. He was prepared to do what was necessary to complete this carjacking, to carry it out and whether, whatever harm, level of harm that rose to. And that's established by, again, his, his, his, um, verbal threat, his huge, um, size disparity and ability to carry out and cause serious physical harm to, to Ms. Silva. Um, the fact that he was ordered to take the vehicle, the evidence established that he was under order to take the vehicle, which establishes that he's prepared to do what was necessary to complete that task. The evidence said that they'd given him an order to take the vehicle, that he was supposedly, they gave him an order that he has to take the vehicle. That's what the evidence was. And then there's also the fact that his only means of escape was on foot. If you were unsuccessful, he would have had to run on foot and flee on foot in a public area with other people there, suggesting that he would have done what was necessary to get in that car to leave. That's another factor. All of these factors collectively established that the jury was reasonable. It was, it was rational for the jury to conclude that Mr. Guerrero, if Ms. Silva had resisted, um, should have, would have, uh, attempted to cause serious physical harm. And the fact that Ms. Silva acquiesced because her children were there and she didn't want to, um, risk them. Just the mere fact that she acquiesced, um, shouldn't cut against a finding that Mr. Guerrero had the necessary intent in this case. Any other questions from my colleagues? No, thank you. Okay. Thank you, Counselor. Attorney Pelletieri, you, at this time, you can mute your device. Attorney, um, Byrd-Lopez, please unmute your device and introduce yourself on the record. May it please the court, Alejandra Byrd-Lopez on behalf of Eddie Guerrero Narvaez. You may proceed, Counselor. Thank you. This case involves a car theft, not a carjacking. This car theft involved no weapon, no force, no violence, not even touching. Video evidence presented at trial showed that after a verbal exchange with Mr. Guerrero, the owner calmly removed her belongings from the heart, from the car. He even helped her to do so before he drove away. Now, the jury may have been swayed to find Mr. Guerrero guilty because he wasn't innocent of all wrongdoing. After all, he, he stole the car, but a well-seasoned judge with 45 years on the bench who has seen all manner of carjackings wrote a detailed opinion giving a blow-by-blow account of the sequence of events that transpired during the incident, and after a detailed consideration of all the evidence, saw the case for what it was, federal overreach, and it correctly concluded that the evidence was legally insufficient to support a beyond a reasonable doubt finding that Mr. Guerrero had the requisite intent to kill or seriously harm anyone to take the car. Now, the government builds its argument by repeatedly characterizing speculation and conjecture as if it were reasonable inference, and by virtually ignoring the beyond a reasonable doubt standard, which it barely mentions in its brief or in its argument at all. The, I think that this is where the, the government really runs into trouble, which is that, um, it, it sees a reasonable inference as something, some information that raises the possibility of something, but a reasonable inference is something very specific. A reasonable inference is a conclusion which follows logically from an established fact through the use of, of, um, logical argument of law of logic and reason. Um, so instead of presenting evidence, the government really relies on, on us to use our imagination to find the requisite intent in this case. All carjacking cases in this circuit and in other circuits require affirmative evidence that a defendant was willing to engage in the kind of violence that would cause death or serious bodily injury, uh, in order to find the requisite intent for a carjacking based on objective, visible conduct. Now that can be either... So when, when, when, when he, when, when, um, Mr. Guerrero said that, uh, he wouldn't harm her or her children if she cooperated and then touched his shirt, why, why isn't, why isn't that sufficient for a reasonable jury to conclude that he intended serious bodily harm? Well, they, as you may have noticed from our brief that we actually take issue with, um, finding that there was a bona fide, uh, threat included in, uh, that, that's, that's necessarily suggested by that conduct. But even if, if the jury had been permitted to draw a reasonable inference of an, of an actual threat, then, um, it, it would, the, the, the, which is actually what the district court below assumed. The district court assumed and, and credited the government's requested inference that that actually constituted a bona fide threat. But even if it had that something or harm that was suggested by the threat was not bodily harm necessarily, nor was it, um, nor was it serious bodily harm, which is what the, the statute requires. Why not? I mean, what's, what is hard to, what is unreasonable about believing that this man who, who's facing a woman, a foot, a foot shorter with her children in the car, what is unreasonable or illogical about assuming that he would do what he threatened to do, which was harm her if she didn't obey him and, and inflict serious bodily harm. He could have, he could have easily broken bones, choked her with his bare hands, could have done any number of things. I agree that that, that shirt touch is hard to but I mean, it, it almost, it almost seems to suggest that with a verbal threat to harm, a firm, cause that's what the victim said that that requires a weapon to accompany it, to be viewed as a, as something a jury could see as a, as intent to inflict serious bodily harm. Well, I think that the context is, if you, if you look at the sequence of events, he approached the door when, um, when she was going to open the door to get out of the car and her testimony is that he stated to her that he had been sent to take the car. And, um, she actually thought it was a joke or a prank. So she asked if it had something to, if this had something to do with the previous owner of the car, he responded, yes. And immediately said, look, I'm not gonna, uh, I'm not gonna hurt you or do anything to you or your children. Um, as long as you cooperate. So if you look at the context, the context does not necessarily imply a bona fide threat, but even if we were to assume that it, that there was an implicit threat to do something or to do harm, that's different from a threat to cause the kind of serious bodily harm or to engage in the kind of serious violence that we see in virtually all carjacking cases that have been decided by this circuit or other circuits. Sure. And I admit that this case does not fit neatly into the precedent at all. And I, I think you're right about that. But so it sounds like you're arguing that when there's an affirmative threat, because the defendant used the word harm, that he has to describe the harm or he or she has to describe the harm to be inflicted if we're to, or otherwise we can't infer serious bodily harm. Why isn't the size different enough? Because the Adams case that you cite in your brief says that the test for intent is the present ability to follow through on the threat. That's certainly present in this case, isn't it? Well, the thing is that the cases that focus on, on having the means to, to carry out the threat are really focusing on having prepared in some way to carry out a threat, usually by having a weapon, right. Or, or some, or some other design, which would, which would facilitate the use of violence, but he can't be penalized because he's a, he's a bigger guy. I mean, that's what the judge said, but can't he, I don't know about penalized being bigger, but can't a jury consider his choice of a smaller victim in relative to his own size? That's not criminalizing his size. That's crediting his ability to reason. Well, I, I just want to point out, and, and again, the district court, the district court gave credence, it accepted the, the reasonable inference that there was a threat, right? And it, it accepted the inference that he was bigger and had, had, had chosen a smaller victim. But the truth is the, the evidence on record doesn't show that he selected a smaller victim. He approached the car before he could tell what was her size or statute. And if you look at the video evidence... How do you know that counsel? I mean, it sounds like you're, you're, you're asserting what he could perceive before he made the decision to approach the car. Where does that come from? I don't, I'm not aware that there's any evidence in the record to support that proposition. Well, he approached the car before he had, he may have had an opportunity to see, and there's nothing in the record that shows that he did have an opportunity to appreciate her size and stature before he approached the car and before she opened the door. So, but even if that were the case, even if that were the case, the truth is there's no evidence here that he was willing to engage in the kind of violence. And just to make a clear, an important clarification, the government seems to think that having made, having made an empty threat is some kind of an affirmative defense. It's not an affirmative defense. It's an obligation of the doubt that it wasn't an empty threat. And especially since the government relies on the implied threat with a gun, and there's zero evidence in this record of a gun, zero. The jury was not entitled to infer that there was a gun present because no one ever saw him with the gun. There's no gun evidence, but, but do you, because I watched the video myself, and I know you must have watched it a thousand times, right? Would you disagree with me that the, what the video shows is him seeing the driver, waiting, and then approaching. He saw the driver. He saw the driver's size. He saw the car, but if you look at the video evidence, it appears that there were tinted windows. You cannot see from the video evidence, you cannot see inside the car. At least when I, when I saw it a thousand times, I could not tell if anyone who was close to the car could have seen into, inside the car. So, and it was a sunny day. There may have been glare or, but the video evidence doesn't show that he could appreciate what, you know, what she looked like inside the car. And, and the, and the judge indulged that inference, even so. And the problem here is that his conduct, at all times, during this entire process, if I could just make one, during the entire point, is that he avoided confrontation and violence and even unpleasantness at every turn. And he accommodated the owner, and from the time he approached the car, and it was sort of talked about that he was going to take the car, to the time that he left with the car, almost a full two minutes transpired. And at every time he, and he allowed her to take his things out of the car to, to, and to go through an entire process. It was almost a business-like transaction. So the, the government's insertion of facts that are not supported by the record show that the, that the decision of the district court was, was correct. I wasn't going to raise this with you though, but I think I need to now that you just said that, because I, I realize this is close, but I, I didn't hear the government insert any facts into the record. In fact, in your brief, you described your statement of facts in your brief as based not only on the trial record, but on the PSR, which I, frankly, I think what you've done is insert facts into the record that weren't, that weren't possibly in the trial record. I think that's impermissible. And I think there are some instances in your brief of that. I don't plan to take you to task for them right now, but if you're going to suggest that the prosecution did that, I think your brief actually shows the opposite. You even concede that you drew facts on a, on a rule 29 motion from the PSR. That's impermissible as far as I know. I'm happy to respond to any specific concerns the court has with regard to my inserting any facts. I waited too long to raise this. So understood. Okay. I mean, the, the, the particular facts that I think, I mean, to give an example of a reasonable inference, I mean, if I said that I were going to get up and I'm thirsty and I'm going to go get a drink, you can infer that I got a drink, but you can't infer that I drank a Coke. That is to insert an additional fact. So when the person, when, when Mr. Guerrero says, I'm not going to do anything to infer that he would have, that that means, and that he meant to communicate that he would have committed, that he would have committed violence that would have caused the kind of serious bodily injury that is required by the statute would be to insert something that is not reasonably derived from that information from that statement. Counselor, just very quickly, what is the relevant? I mean, she clearly felt, she said, I was, I was threatened by this. I was, I was in fear. And so I, so I complied when she says I was in fear. I was in fear that if I did not do what he said, that he would hurt me. How, what is the relevance of her fear, her reaction, her sense of intimidation to the intent element that the jury has to find in order to convict him? What is the relevant of all, what is the relevance of all of that? Well, the important thing is that what we're trying to determine is his state of mind, not her state of mind. Her state of mind is not equivalent to his state of mind. And she can draw conclusions and be suspicious and jump to conclusions, whatever she finds useful in her life. But unless the jury has specific facts from which they can determine that her perceptions are reasonable, then, then we have a problem, which is the problem. I guess, I guess we're trying to figure out why wasn't her perception reasonable? Her, her, her, well, there, she, she states various perceptions. One perception that she was being threatened, and I've already addressed a little bit why that perception may have been problematic. But even if we, even if we did credit it, that, that there would still be no evidence that it was anything beyond an empty threat. And her perception of a gesture, some of a gesture, we really just have no facts. We could have had a description of the gesture, but we don't. The government stated in its, in its opening argument that he touched his waistband, but that's nowhere in the record. And she never said that. And the government never asked her what the gesture was. So this, this gesture, which she never mentioned in the 911 call, and which she describes in really equivocal language, sort of an intimidating gesture, as if he was trying to tell me. So we don't know what that is. We have no... Counsel, I must say, I think you make a mistake. If you try to dismiss the reasonableness of her reaction or any inconsistencies in her account, given that this was, this was clearly an emotional event. But I, I would think your point would be that even if her perception was reasonable, reasonable to fear this large man who's saying that I'm going to hurt you. And I mean, I won't hurt you if you do what I say. Even if that's reasonable, that still doesn't necessarily inform the reasonableness of the jury's judgment about what, what her, what her intent was. Like, my point is, I don't know why you have to characterize her response as unreasonable in order to further your position. I just, I just don't get that. Well, the truth is I don't, because the court, the court below in, in ruling and making its determination under Rule 29 credited those, those perceptions. And what it concluded was that even if, even if that had been a bona fide threat, then there was no evidence to support the inference that it was anything beyond contempt. And that in and of itself, we have to use the defendant's conduct as the primary indicator of his intent and his conduct throughout the, throughout this encounter was accommodating to the owner and avoidant of all violence. And that is, that sets this case completely apart from virtually any other carjacking case. And even if, if the court looks at Dias Rosado, which this court found was a close case, there we had a defendant who was unarmed, but who engaged in ever escalating violence, even up to the point of putting the car in gear while a desperate grandmother was trying to get a child out of the back of the car. And here there was nothing even closely similar. This is exactly the opposite. The Mr. Guerrero accommodated Ms. Silva and allowed her to do everything she needed to do before he took the car. There's just no information. There are just no facts that suggest that he would have done anything other than allow this to go on. Anything else is speculation. Anything else is imagining what might've happened if the facts had been a little different. And the truth is we just don't know. And in addition to the reasonable inferences that might be drawn, we have to remember that the case, the government had to prove his case beyond a reasonable doubt. So the idea that because it's possible that he might have engaged in violence, it would not support a conviction because the case had to be proven beyond a reasonable doubt. Thank you, Counselor. Attorney Bird Lopez, at this time, you may mute your audio and your video. Attorney Rios-Mendez, please unmute your video and audio and introduce yourself on the record. Good morning, Your Honor. Attorney Rios-Mendez for APLI-K-VAN Cartagena, Suarez. First, I'd like to address the issue of the sentence at the incident case. First, at page 11, number 4, the court says that following Siva and keeping her close, the fourth factor relied by the record. The government's proposition that Guerrero followed Silva around the vehicle and kept her close at all times is false. In fact, Silva mostly moves around the SUV freely. That's the first thing that came to my mind as I heard Sister Counsel discussing the issue. Second, in my case, my sense of perception, when Miss Silva was approached, she thought it was a prank from her husband. Third, when she called the police, 911 call, she told the police, the police asked her, are you still there? She says, yes, I'm alone with my children, but that was not true because her husband was there and Rady Reynoso had left her when her husband came. So, and further, if we take her demeanor in the case, she told the 911 call that there were two people that contacted her car, took her car, and they were both in red and that was belied by herself. In cross-exam, she said she never saw Keivan Cartagena at all. She never knew he existed. She only knew that, she only mentioned him because Rady Reynoso told her that he followed her car that had her back door open and saw two people, but then he retracted and said he never saw their faces or their bodies. So, he just saw two persons, one large, one small. They never identified and couldn't identify Keivan Cartagena. Second, in court, he was asked to identify the people, the car dockers, supposed car dockers. He asked the- Time has expired. Can I- Yes, please. Yes. He asked the government attorney, can you tell me where to look? He never saw, he never knew, he never identified any of these two people. And plus, if I may, the government made too many inferences, too many conjectures as to what happened, especially related to Keivan Cartagena. Keivan Cartagena was seen by the videos and he walked in the gas station and his mode of walk can be seen through all the video that he wrangles his arms, but you cannot actually say he's pinpointed anybody, first. Second, he knew that his friend had told him that he would probably needed good wheels, good wheels, and good wheels meaning a pretty car. So, when the other person, the other person realized that there was a nice looking car, he was looking at the car, not at the person who was driving it. So, it happened that it was the victim, a small woman, but he was looking at a nice looking car. And Keivan to the FBI agent, when he was interrogated twice, that he knew he was told, foretold that a car was wanted, a nice looking car, but he didn't trust that comment because he knew Mr. Guerrero never done that. He had never committed that type of crime or any other crime can be told. Thank you, Counselor. Any questions? No. Okay. Thank you, Counselor. Thank you. Thank you, Counselor. You can mute your audio and video at this time. Attorney Pelletieri has a two-minute rebuttal. If he could unmute his audio and his video and reintroduce himself on the record. Just briefly before you start, I don't want to take up Attorney Pelletieri's time, but I do want to apologize to Attorney Byrd. It was not Attorney Byrd's brief that cited the PSR for facts. It was actually Attorney Rios-Mendez. So, I'm sorry about that, Attorney Byrd. Go ahead, Counselor. Thank you, Your Honors. John Pelletieri on behalf of the United States. Ms. Silva plainly believed Mr. Guerrero when he said he was going to harm her unless she gave up the car. And the jury was reasonably entitled, given all the totality of the circumstances in this case, to reach the same conclusion. That Mr. Guerrero meant what he said was not bluffing. The defendants asked this court to turn the Rule 29 motion, the Jackson v. Virginia Standard, on its head and to entertain inferences that would cut against the jury's verdict. But obviously, the court has to entertain all the inferences in favorable to the jury's verdict. And I'd like to just give a point to a couple of instances. So, for example, one, my friends have said that there may have been a glare, it was sunny, and there's not sufficient evidence to indicate that Mr. Guerrero and Mr. Cartagena saw the more diminutive stature of Ms. Silva when they selected her. But the evidence plainly permitted the jury to conclude to the contrary. Mr. Cartagena and Mr. Guerrero were casing, the evidence established that they went to the gas station with the intent, had made a decision that they were going to commit a carjacking, steal a car. And then they waited an hour looking at various potential victims. And then only when Ms. Silva pulled up, did Mr. Cartagena give a signal to Mr. Guerrero, and Mr. Guerrero went and approached. And then Mr. Guerrero didn't threaten Ms. Silva until actually she opened the car. And that's the is the important moment. Ms. Bird says that when he says, I will not harm you, if you give up the car, that you can infer from that, that he will harm her. Your Honor, juries have to be entitled to use common sense. The clear import of that statement is, get out of the car or I'm going to harm you. I mean, the jury is well entitled to make that decision. When defendants have a gun, for example, and they've credited conduct and statements defendants make that they may not say, I'm going to shoot this gun and put a bullet in you if you don't cooperate. But the language indicates that that's what they mean. And that's what happened here. Councils say it's our Diaz-Rosado decision and the observation in that we said that was a closed case and we did. And the facts there are far, far removed from the facts here in terms of the resort to violence, to physical force by the defendant there. There's nothing remotely like that in this case. So if that was a closed case, why isn't this case beyond the pale? Well, we think this is a closed case, Your Honor, but there are different facts than in Diaz and facts that cut in favor of the inference that the jury reached. And for example, there's the fact that this was a premeditated crime that the defendants were waiting at least an hour to commit and look for a victim that a much larger defendant, capable of carrying out physical harm to carry out, was selected and went there. There was an premeditated make it such that they intended to facilitate the crime by serious bodily injury or harm. Well, Your Honor, it's the method of planning and all the facts that go into the planning here, which is waiting for a victim against whom they could use harm and selecting the one of the two perpetrators who was able to carry out that harm and physical harm. And that kind of premeditation was not present in Diaz. There was also no explicit threat in that case. There was no evidence that the defendant in that case had been ordered to take the car, so it was under an order to carry out the carjacking. There's no evidence... You know, when people are seated, the point Ms. Burke was trying to make is that you can't really tell how tall they are. So, you know, how do we assume that he chose her because she was small? Because is there really any way of knowing that before she actually got out of the car? Two things, Your Honor. One is the jury could reasonably infer from the circumstances that because the defendants were waiting and selected someone at that point, they were waiting for someone vulnerable, but also they can reasonably... Aren't they just like to her car? Well, Your Honor, you can also reasonably infer that when someone's situated in their car, you can tell generally from their vantage point whether they're high or low, and that's a reasonable inference the jury can make. And also... Can you? Well, we think you can, but also more importantly, Your Honor, what's relevant is Mr. Garreau's blocking Ms. Silva from exiting. Now, maybe he was going to go and see... They thought maybe this is a vulnerable person, a smaller person, but then he wasn't going to make the final choice until he was actually there, and he did see her. So he did see her before he made that threat. He only made the threat after he saw Ms. Silva right in front of him. So he was entitled to conclude that that was a factor both in selecting it and then in finalizing it and actually carrying it out. In terms of all this evidence that it was a calm situation, that all goes to the point that you have to look at the moment that Mr. Garreau took control of the car and made the threat. At that point, he said, I'm going to hurt you if you don't cooperate. Then Ms. Silva acquiesced and she said... He said, I'm not going to hurt you. I'm sorry. He made the threat. The importance was the substance that was conveyed is get out of the car or you're going to get hurt. You and your children, I'm going to hurt you. And at that point, then- But now, certainly the way he treated her after that moment that you focus on, and the way that he allowed her to get her stuff out of the car, the way in which he helped her, certainly that informs what his mindset was at that moment that you're referring to. The way that he treats her throughout the incident, you cannot dismiss, it seems to me, the significance of how patient he seemed to be with her, how willing he was to help her. That's certainly all relevant to what was in his mind at the moment that you focus on, is it not? Well, certainly it's a jury argument that could have been made that, look, he was calm afterwards. But let me tell you why it certainly does not compel a finding of jury irrationality here. That's because, as the Supreme Court of Holloway stated, what's important is the mindset at the point when the defendant took control of the vehicle. At that point, did he intend, if necessary, to carry it out? And in this case, Mr. Guerrero made the threat. Ms. Silva acquiesced and said, can I get my stuff out of the car? At that point in time, then she got out and he let her get the stuff out. He had control over that car. She wasn't going to be able to get back in. She was away from the driver's seat, getting her stuff out. He controlled the vehicle at that point in time. He had used the threat of force and the intended use of force to take control of that vehicle. And then at that point, he had no use for potentially threatening her. He was in control of the situation at that point, in control of the car. And he let her, rather than let it escalate, he let her get her things out. And that doesn't compel the conclusion that at the moment that he took control of the car, he made the threat. He didn't mean to carry it out. And I would point the court to the Fourth Circuit's decision in small. In that case, the defendants held the gun to the victim, said, give me your, they pattered him down, give me your keys, take your keys. He said, here, you can have the car keys, but you can't have my house keys. They said, fine. Well, they only took the house keys. And then they said, you're coming with us to your car. And he said, no, I'm not going with you. And he went and walked home and he walked away. He said, I'm not going with you. And they didn't do anything. And the Court of Appeals, the Fourth Circuit said, well, that doesn't mean that he didn't at the point that they made the threat and tend to carry it out when they took control of the vehicle by obtaining the keys. And that's the same thing here. Mr. Guerrero took control of the car at the moment he threatened Ms. Silva and she acquiesced and got out of the car. At that point in time, it's the equivalent of the victim in small walking away and saying, I'm not going to your house. And at that point in time, yes, he didn't want to perhaps, perhaps, maybe he didn't want to commit violence at that point because he had control of the car. And for all these reasons, we think that the jury reasonably concluded it wasn't irrational for the jury to conclude that Mr. Guerrero intended to use to cause serious physical harm or death if necessary to carry out the carjacking in this case. And we'd ask the court to reverse and remand with instructions to state the verdicts. Thank you, Counselor. Any other questions? No, thank you. Thank you. That concludes argument in this case. Attorney Palateri, Attorney Byrd, Lopez and Attorney Rios-Mendez, you should disconnect from the hearing at this time.